IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOUIS BARTOLOTTI, individually and on behalf of all others similarly situated,<br><br>                      Plaintiff,<br>v.<br><br>SIMPSON IMPORTS, LTD.,<br><br>                      Defendant. | CASE NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Louis Bartolotti ("Plaintiff" or "Mr. Bartolotti"), by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge, against Defendant Simpson Brands, Ltd., d/b/a San Merican Tomatoes ("SMT" or "Defendant").

## NATURE OF THE ACTION

1. This is a class action lawsuit on behalf of purchasers of SMT brand canned tomatoes (the "Tomatoes" or the "Products") in the United States.[1]

2. San Marzano tomatoes are a highly sought-after variety of tomato – generally considered the best for making sauces. As a result, both San Marzano "style" and San Marzano D.O.P. tomatoes command a significantly higher asking price than standard plum or Roma tomatoes, and consumers are willing to pay for it.

---

[1] The Products include, but are not limited to, SMT-branded crushed, diced, whole peeled, and pureed tomatoes. The Tomatoes can come in a can or a box.

1

3. Defendant does not sell San Marzano tomatoes – it sells inferior Roma tomatoes. But Defendant utilizes highly misleading tomato packaging to trick consumers into believing that they are purchasing genuine San Marzano tomatoes, at San Marzano prices.

4. As described in further detail below, the label used for all of Defendant's tomato Products bears several features which make it highly misleading.  As a result, consumers have purchased hundreds of thousands of Defendant's Products under the false, but reasonable, impression that they were purchasing a San Marzano varietal of tomato, when they were not.

5. Because cans of tomatoes are opaque, consumers can only examine the label when they deciding which can of tomatoes to purchase.

6. Defendant has known or should have known about its misleading packaging for years, but has taken no action to fix it.  Instead, Defendant continues to rely on deception to reap much greater profits than it would otherwise.  If consumers knew the truth about Defendant's Tomatoes, they would not have purchased them or would pay significantly less for them than they did.

**Background on San Marzano tomatoes:**

7. Tomatoes come in many different varieties such as cherry, beefsteak, or Roma, each of which have unique flavors and uses.  The San Marzano is one such tomato varietal.



8. The San Marzano varietal of tomatoes originates from the town of San Marzano sul Sarno, near Naples, Italy. It was first grown in the volcanic soil around Mount Vesuvius.

9. Some San Marzano tomatoes are still grown within proximity to Mount Vesuvius. These specific San Marzano varietals bear a special designation: D.O.P. (*Denominazione d'Origine Protetta*, "Protected Designation of Origin"), which certifies that they were grown in the San Marzano region of Italy.

10. But not all San Marzano tomatoes are D.O.P. Many San Marzano tomatoes varietals are grown in the United States, in which case they are labeled as "San Marzano style" or just "San Marzano" without the D.O.P. designation.

11. Compared to the Roma tomato, San Marzano tomatoes are thinner and more pointed. The flesh is much thicker with fewer seeds, and a stronger, sweeter, less acidic taste.



12.     The unique characteristics of the San Marzano tomato mean that they are perfectly suited for making sauces.  Indeed, they are widely considered the best tomato in the world for the task.

13.     Blind taste testing has shown that the difference between sauces made with Roma tomatoes and sauces made with San Marzano tomatoes is significant, with Roma tomatoes consistently producing a less desirable sauce.

14.     Roma tomatoes are considered worse because they are more acidic and have thinner flesh, producing a more watery and sour tasting sauce.

15.     Due to these clear differences, chefs and home cooks alike seek out canned San Marzano tomatoes, and are willing to pay for them. San Marzano tomatoes routinely command double or triple the asking price of regular canned Roma or generic tomatoes.

16.     By way of example, below is a comparison between regular and San Marzano tomatoes sold by Safeway:

| PRODUCT | PRICE |
| --- | --- |
| Signature SELECT Tomatoes Peeled Whole – 28oz | $2.59 |
| Hunt's Crushed Tomatoes – 28oz | $3.29 |
| Take Root Organics Whole Tomatoes – 28oz | $3.79 |
| SMT Whole Peeled Tomatoes – 28oz | $5.99 |
| Italbrand Tomatoes Peeled Italian San Marzano D.O.P. – 28oz | $5.99 |
| Cento Tomatoes San Marzano D.O.P. – 28oz | $8.99 |

4

17.     The type of tomato a consumer is purchasing is thus material.  Consumers are willing to pay significantly more for San Marzano tomatoes than those of other varieties.  No reasonable consumer would spend two or three times as much for tomatoes that offer nothing over their cheaper counterparts.

**SMT Brand Tomatoes are Labeled to Mislead Consumers**

18.     Defendant Simpson Imports, Ltd., markets and sells its tomatoes under the "SMT" brand.

19.     Defendant sells boxed tomatoes, canned tomatoes, tomato sauces, and tomato pastes.

20.      Defendant's Tomatoes are all packaged with the same visually distinct and eye-catching label, an example of which is depicted below, subject to minor and inconsequential variation:



5

21. The label features large illustrations of a San Marzano varietal tomato against a white background, with a thin ribbon of text around the top and bottom stating what kind of tomato preparation is in the can (*i.e.*, whole, crushed, diced, pureed). In the middle of each tomato illustration are the letters SMT.

22. Consumers looking for a San Marzano varietal tomato have only this label to work from when making their purchasing decision, they cannot see inside of the package.

23. SMT's labeling is misleading to reasonable consumers.

24. First, the illustration is unmistakably that of a San Marzano tomato. So consumers who are aware of what San Marzano tomatoes look like, and who are seeking out San Marzano tomatoes, are predictably misled into believing Defendant's package contains them.

25. Defendant knows that this image is of a San Marzano tomato because Defendant used to sell actual San Marzano varietal tomatoes, using nearly identical packaging. The only difference was that Defendant's package used to have "San Marzano" written where "SMT" is now. Defendant's old label is depicted below.



26. Though Defendant no longer sells true San Marzano tomatoes, its packaging still bears the image of one.

27. Second, the SMT lettering can reasonably be understood as an abbreviation for "San Marzano Tomato." After Defendant stopped selling true San Marzano variety tomatoes, it changed to "San Marzano" to "SMT," ostensibly to avoid false advertising. However, the letters SMT, while not literally false, are highly misleading, because a consumer looking for San Marzano tomatoes in the tomato aisle is primed to think that SMT stands for the San Marzano tomato.

28. Defendant attempts to skirt around this potential for misunderstanding by writing out what SMT stands for within the "SMT" lettering on its Products' packaging. The result is lettering so comically miniscule that it is almost impossible to see with the naked eye.



29. As it turns out, SMT stands for "San Merican Tomato." That is not curative. In the exceedingly unlikely the event a consumer even notices the term, a reasonable consumer would understand "San Merican Tomato" to mean "San Marzano varietal tomatoes grown in North America."

7

30. Finally, Defendant sells its Products at San Marzano prices. A 28oz can of SMT tomatoes sells for $5.99. Consumers expect to pay more for San Marzano tomatoes, and as such are primed to interpret Defendant's pricing as being in line with what a San Marzano should cost.

31. Each of these factors, on their own, is enough to mislead reasonable consumers into believing that Defendant's Tomatoes are San Marzano style – in the aggregate they create an unshakeable impression that Defendant is relying on its Products' capacity to mislead for the purpose of reaping inflated profits.

32. Even grocery stores are misled by Defendant's packaging, with retailers consistently mislabeling its Products as "San Marzano Tomatoes" on its Products' barcodes and price labels. The below screenshot is from the Safeway website, which has labeled Defendant's Tomatoes as "San Marzano Tomatoes":



33. The reality is, Defendant's tomatoes are not San Marzano tomatoes, not even close.

34. When consumers open a can of SMT tomatoes, they are greeted with a round, firm, acidic Roma tomato. Comparing a true San Marzano with the SMT tomato, the difference is stark.



35. The difference is not just cosmetic. In blind taste testing by a prominent YouTube chef, SMT tomatoes were consistently ranked alongside generic plum tomatoes at the bottom of the pile, far below San Marzano tomatoes, both in flavor and consistency.

36. Consumers purchase Defendant's Products under the reasonable belief that the lettering, imaging, and price is in accordance with a San Marzano tomato, only to receive an inferior Roma tomato.

37. Had consumers known the truth about Defendant's Tomatoes, they would not have purchased them or would have paid less for them than they did.

9

38.     Consumers are not likely to learn the truth about Defendant's Tomatoes on their own accord.  For one, many times consumers purchase the tomatoes in a crushed, diced, or pureed form, making it impossible to see the tomato's original shape.  Second, it is difficult to see the shape of even whole tomatoes because they are covered in juice and tomato puree, and often dumped into a pot and immediately crushed to form a sauce.  Reasonable consumers would not think to take each tomato out of its can, wash it off, and compare it with other brands.  The result is that consumers rely on the label of the can or box to communicate truthfully the variety of tomato that they are purchasing.

39.     Plaintiff is a purchaser of SMT canned Tomatoes who asserts claims for breach of express warranty and fraud, and violations of the consumer protection laws of the state of New York, on behalf of himself and all similarly situated purchasers of the Tomatoes.

## PARTIES

40.     Plaintiff Louis Bartolotti is a resident and domiciliary of the Bronx, New York.  Mr. Bartolotti makes tomato sauces at home and prefers to use San Marzano style tomatoes when he cooks.  Mr. Bartolotti has purchased Defendant's canned Tomatoes from Walmart on or after November 2022.  Mr. Bartolotti purchased Defendant's Whole Peeled Tomatoes because he was under the impression that the illustration on the front of the can was of a San Marzano tomato and understood the SMT abbreviation to mean "San Marzano Tomato."  Furthermore, the price of the Products was in line with what he expected genuine San Marzano style tomatoes to cost.  If Mr. Bartolotti knew that the Tomatoes he was purchasing from Defendant were in fact regular Roma tomatoes, he would not have purchased them or would have paid less for them than he did.

41.     Defendant Simpson Imports, Ltd., is a Pennsylvania corporation with its principal place of business in Jenkintown, Pennsylvania.  Defendant is a very well-known and popular tomato seller, with presence on grocery store shelves nationwide.

## JURISDICTION AND VENUE

42. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

43. This Court has personal jurisdiction over Defendant because Defendant conducts business in New York. Defendant has marketed, promoted, distributed, and sold the Tomatoes in New York, rendering exercise of jurisdiction by New York courts permissible.

44. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

45. All conditions precedent necessary for filing this Complaint have been satisfied and/or such conditions have been waived by the conduct of the Defendant.

## CLASS REPRESENTATION ALLEGATIONS

46. Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Tomatoes (the "Class"). Excluded from the Class are persons who made such purchase for purpose of resale.

47. Plaintiff also seeks to represent a subclass defined as all Class members who purchased the Tomatoes in New York (the "New York Subclass").

48. Members of the Class and New York Subclass are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class and New York Subclass number in the millions. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class

11

members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

49. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to whether Defendant's labeling, marketing and promotion of the Tomatoes is false and misleading.

50. The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendant's false and misleading labels, marketing and promotional materials and representations, purchased the Tomatoes, and suffered a loss as a result of that purchase.

51. Plaintiff is an adequate representative of the Class and New York Subclass because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

52. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of

Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### Deceptive Acts Or Practices, New York Gen. Bus. Law § 349

53. Plaintiff incorporates by reference and re-alleges the allegations set forth above as though fully set forth herein.

54. Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendant.

55. By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making false representations on the label of the Tomatoes.

56. The foregoing deceptive acts and practices were directed at consumers.

57. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the production and quality of the Tomatoes.

58. Plaintiff and members of the New York Subclass were injured as a result because (a) they would not have purchased the Tomatoes if they had known that the Defendant's representations with regard to their style and variety of their Tomatoes were false, and (b) they overpaid for the Tomatoes on account of Nellie's representations.

59. On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under Section 349 of the New York General Business Law.

## COUNT II
## False Advertising, New York Gen. Bus. Law § 350

60. Plaintiff incorporates by reference and re-alleges herein the allegation set forth in all preceding paragraphs of this complaint.

61. Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendant.

62. Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law by misrepresenting on its Product's labels that the Tomatoes are San Marzano varietal tomatoes, as alleged above.

63. Plaintiff understood the representations on Defendant's labels to mean that Defendant's Tomatoes were San Marzano varietal tomatoes.

64. The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

65. This misrepresentation has resulted in consumer injury or harm to the public interest.

66. As a result of this misrepresentation, Plaintiff and members of the New York Subclass have suffered economic injury because (a) they would not have purchased the Tomatoes if they had known that the representation made on Defendant's Products' labels were false, and (b) they overpaid for the Tomatoes on account of the misrepresentation.

67. On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs and any other just and proper relief available under Section 350 of the New York General Business Law.

## COUNT III
### Fraud

68.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

69.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and New York Subclass against Defendant.

70.     As discussed above, Defendant misrepresented on the Tomatoes' packaging that the Tomatoes are San Marzano tomatoes. Specifically, Defendant's label bears images of San Marzano tomatoes, the letters SMT can be understood by consumers to stand for San Marzano Tomato," and the term "San Merican Tomatoes," if even seen by consumers, can be reasonably understood to mean "San Marzano varietal tomatoes grown in North America."

71.     The false and misleading representations and omissions were made with knowledge of their falsehood. Defendant used to sell true San Marzano tomatoes in a can virtually identical to the one at issue in this action. Nonetheless, Defendant continues to sell its Tomatoes to unsuspecting consumers using these false and misleading representations and omissions.

72.     Defendant is aware how San Marzano tomatoes are perceived by consumers because they used to sell them.

73.     The false and misleading representations and omissions were made by Defendant, upon which Plaintiff and members of the proposed Class and New York Subclass reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the proposed Class and New York Subclass to purchase the Devices.

74.     The fraudulent actions of Defendant caused damage to Plaintiff and members of the proposed Class and New York Subclass, who are entitled to damages and other legal and equitable relief as a result.

## COUNT IV

### Breach of Express Warranty

75. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

76. Plaintiff brings this claim individually and on behalf of members of the Class and New York Subclass against Defendant.

77. In connection with the sale of the Tomatoes, Defendant, as the producer, marketer, distributor, and/or seller issued written warranties by representing that the Tomatoes are "SMT" and/or "San Merican Tomatoes." The packaging similarly contained misleading images of San Marzano varietal tomatoes, as alleged above.

78. In fact, the Tomatoes do not conform to the above-referenced representations because the Tomatoes sold by SMT are not San Marzano varietal tomatoes at all. They are inferior Roma varietal tomatoes.

79. Plaintiff and the members of the proposed Class and the New York Subclass were injured as a direct and proximate result of Defendant's breach because (a) they would not have purchased the Tomatoes if they had known that the representation made on Defendant's Products' labels were false, and (b) they overpaid for the Tomatoes on account of the misrepresentation.

80. Plaintiff's counsel notified Defendant of his claims in a demand letter shortly after learning about its breach of warranty, sent via certified mail, with return receipt requested, on January 25, 2023.

81. The demand letter was sent within a reasonable time after Plaintiff discovered Defendant's breach and learned of the nature of Defendant's practices. The letter therefore complied with all respects of N.Y. U.C.C. § 2-607.

## **RELIEF DEMANDED**

82. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

   a. For an order certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representatives of the Class and New York Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass members;

   b. For an order declaring that Defendant's conduct violates the statutes referenced herein;

   c. For an order finding in favor of Plaintiff, the nationwide Class, and the New York Subclass on all causes of action asserted herein;

   d. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

   e. For prejudgment interest on all amounts awarded;

   f. For an order of restitution and all other forms of equitable monetary relief; and

   g. For an order awarding Plaintiff and the Class and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated:  May 9, 2023                           Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:  /s/ *Matthew A. Girardi*
         Matthew A. Girardi

Matthew A. Girardi
888 Seventh Avenue
New York, NY 10019
Tel:  (646) 837-7150
Fax: (212) 989-9163
E-Mail:  mgirardi@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*Pro Hac Vice Forthcoming*)
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

*Attorneys for Plaintiff*